UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| NICOLE SOLAS,<br>    Plaintiff,<br><br>v.<br><br>TOWN OF SOUTH KINGSTOWN,<br>SOUTH KINGSTOWN SCHOOL<br>DEPARTMENT, SOUTH<br>KINGSTOWN SCHOOL<br>COMMITTEE, SARAH MARKEY, and<br>EMILY CUMMISKEY,<br>    Defendants. | C.A. No. 24-cv-310-MRD-LDA |

MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

This case evolved out of the important and hot-button issue of public-school education curricula. Plaintiff Nicole Solas became curious about the curriculum at her child's prospective elementary school and set out to obtain that information from the school directly. Within the span of weeks, her voluminous requests for information through the Access to Public Records Act ("APRA") escalated into a public debate about the school district's commitment to principles of equity and antiracism. The school district struggled to find the right approach to responding to the sudden influx of requests that required disclosure of voluminous amounts of material. At the same time, its members remained vocally committed to the principles of equity and antiracism.

Before this Court can dive into the three weighty claims alleged by Solas in the Complaint – a First Amendment retaliation claim pursuant to 42 U.S.C § 1983, an Equal Protection discrimination claim pursuant to 42 U.S.C. § 1983, and a Civil Conspiracy to Interfere with Civil Rights claim pursuant to 42 U.S.C. § 1985 – it must resolve the time-bar issue raised by the Defendants[1] in their Motion to Dismiss currently pending before the Court. Are Solas' claims barred by the statute of limitations? For the reasons discussed below, the Court concludes Solas' claims are time-barred and GRANTS the Defendants' Motion to Dismiss.

I.    BACKGROUND

Before her child started kindergarten, Solas became concerned that the concepts of "Critical Race Theory"[2] ("CRT") and "gender theory" were being integrated into the school's curriculum. Compl. at ¶ 33 (ECF No. 1). She inquired about how her school district's public elementary school integrated these theories into the classroom, requested a tour of the school her child would be attending, and sought to

---

[1] The Defendants in this action are the Town of South Kingstown, South Kingstown School Department, South Kingstown School Committee, Sarah Markey, and Emily Cummiskey (collectively "Defendants").

[2] According to Brittanica.com, CRT is an "intellectual and social movement and loosely organized framework of legal analysis based on the premise that race is not a natural, biologically grounded feature of physically distinct subgroups of human beings but a socially constructed (culturally invented) category that is used to oppress and exploit people of colour." https://perma.cc/B3UY-AS3N. The Heritage Foundation, open critics of CRT, explains that CRT "is an academic discipline founded by law professors who used Marxist analysis to conclude that racial dominance by whites created systemic racism." The Foundation goes on to say "[t]his has sparked resistance from Americans who refuse to have their children indoctrinated or to submit to race-based workplace harassment." https://perma.cc/P77V-6U5J.

review the elementary school curriculum. *Id.* ¶¶ 35-39, 41. In April 2021, Solas requested records and information about the curriculum from the principal of a South Kingstown public school via email. *Id.* ¶ 40. Miffed by the unresponsiveness of the curriculum director and at the direction of a school committee member, Solas submitted the request for the curriculum as an APRA request. *Id.* ¶¶ 42-43. She received an incomplete response to that APRA request and filed a complaint with the Attorney General pursuant to R.I.G.L. § 38-2-8. *Id.* ¶ 44.

This is when the dispute between Solas and the Defendants began to escalate. Solas "quickly realized that if she structured many specific and narrow requests" she could obtain the information she was looking for. *Id.* ¶ 49. Between April 25, 2021 and June 2, 2021, the school district received 251 APRA requests, of which 201 were submitted by Solas alone. *Id.* ¶ 94. This sudden influx of APRA requests led the school district to consider whether it should initiate litigation against Solas. On May 28, 2021, the South Kingstown School Committee ("SKSC" or "Committee") published its agenda for the June 2, 2021 meeting and included as an agenda item "the [p]otential litigation related to over 160 APRA requests filed by one individual" and "[f]iling lawsuit against Nicole Solas to challenge filing of over 160 APRA requests." *Id.* ¶ 68; *S. Kingstown Sch. Comm. Special Meeting Agenda* (June 2, 2021), https://perma.cc/92VD-A55F. The Committee voted unanimously against initiating litigation and instead unanimously voted in favor of mediation as the way to resolve the dispute about Solas' multitudinous APRA requests to the school district. *Id.* ¶ 108.

3

Over the next two months, Committee members Cummiskey and Markey – who, at the time, were both associated with the National Education Association of Rhode Island ("NEARI") and the National Education Association of South Kingstown ("NEASK") – made public statements[3] related to the CRT dispute with Solas and resigned from their positions on the South Kingstown School Committee. *Id.* ¶¶ 101, 103-05, 107, 112-13, 117-18. On August 2, 2021, NEARI and NEASK (collectively "Unions") sued Solas, the South Kingstown School Department ("SKSD"), and SKSC in Rhode Island's state Superior Court. *Id.* ¶ 129; ECF No. 1-1 at 4. Solas was served with that lawsuit on August 4, 2021.[4] *Id.* ¶ 123. That suit sought to protect confidential teacher information from being disclosed in responses to the APRA requests. *Id.* ¶ 129; ECF No. 1-1 at 4 ("In short, this action seeks to : (a) prohibit the disclosure of non-public records; and/or (b) for those requests that call for personally identifiable and other personnel-related information about public school teachers, that no records be disclosed until the court employs a balance test that properly

---

[3] "During the [June 2] meeting, School Committee member Sarah Markey…tweeted 'this fight vs. CRT.'" Compl. at ¶ 101. Then on June 16, 2021, "Cummiskey co-authored…an op-ed in the Providence Journal about Ms. Solas' 'frivolous' APRA's, stating, '[t]he General Assembly should explore legislation to address unreasonable and frivolous APRA and freedom of information requests… That is an issue that needs to be addressed by the highest law enforcement agency in the state, the attorney general.'" *Id.* ¶ 113.

[4] At the hearing on the Defendants' motion to dismiss on April 23, 2024, Counsel for Solas suggested she was served on August 6, 2021, but the Complaint and proof of service on the docket both reflect that she was served on August 4, 2021. *See* PC-2021-05116, https://perma.cc/JN44-EYUM.

assesses the public interest in the records at issue measured against the teachers' individual privacy rights").

Other relevant dates included in the Complaint are September 19 and 24, 2022, October 24, 2022, and March 14, 2023. Solas alleges that, on September 19, 2022, state senator Kendra Anderson "tweeted that she reported Ms. Solas to Twitter" and got Solas' account banned, and a few days later, on the 24th, "Rhode Island legislators Brandon Potter and Tiara Mack participated in an online smear campaign against Ms. Solas." *Id.* ¶ 134. Then, on October 24, 2022, Solas alleges, Rhode Island's Attorney General, Peter Neronha, "gave a local radio interview in response to Ms. Solas' criticism of his 'muting of 152 Twitter accounts'" and "complained that Ms. Solas constantly criticized him and that he considered many of her complaints concerning the School Committee frivolous." *Id.* ¶ 135. And lastly, according to Solas, "[o]n March 14, 2023, the School Department served [her] with a legally deficient 'offer of judgment' in a separate lawsuit involving an unlawful denial of an APRA request, which was merely another intimidation tactic."[5] *Id.* ¶ 136. This was, according to Solas, "the last straw of this continuing intimidation." Def.'s Mot. to Dismiss Hr'g Tr. 22:19-24 (April 23, 2025).

---

[5] Solas' Opposition to Defendants' Motion to Dismiss asserts that this deficient "offer of judgment" was made in March 2024, citing to the Complaint, but the Complaint alleges this offer occurred in March 2023. *Compare Pl. Compl.* at ¶ 136 with *Pl. Opp'n to Defs. Mot. to Dism.* at 39. At the April 23, 2025 hearing, Plaintiff's Counsel also asserted the "offer of judgment" was made in March 2024. Def.'s Mot. to Dismiss Hr'g Tr. 21:3 (April 23, 2025). This discrepancy does not change the Court's analysis, so for ease of reading, the Court will use the March 14, 2023 date contained in the Complaint when referring to this event.

Solas filed the instant Complaint (ECF No. 1) alleging civil rights violations by the Defendants. The Defendants responded with a Motion to Dismiss, in which they argue several grounds for dismissal, including that Solas' claims are all time-barred. Def.'s Mot. to Dismiss at 10-12 (ECF No. 15). Solas' Opposition to Defendants' Motion to Dismiss (ECF No. 18) asserts that her claims are not time-barred based on the continuing violation doctrine. Pl.'s Opp'n to Mot. To Dismiss (ECF No. 18 at 35-39).

## II.  LEGAL STANDARD

The Defendants posit several grounds for dismissal alongside the statute of limitations, including a failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the abstention doctrine pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and the propriety of certain named defendants. The time-bar issue, however, is a threshold issue that must be addressed first because "it is sometimes permissible to grant a motion to dismiss based on an affirmative defense, such as the statute of limitations." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005). So, even in instances where a well drafted Complaint states plausible claims, if the suit was initiated after the statute of limitations has run and "the pleader's allegations leave no doubt that an asserted claim is time-barred," the claims would be barred and the Court must dismiss the Complaint. *Id.* (quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998)). The ultimate questions for this Court are what date triggered Solas' clock relative to the applicable statute of limitations and did Solas initiate her claims before the time ran out?

## III. DISCUSSION

To determine if Solas' claims are indeed time-barred, the Court must first identify the appropriate statute of limitations to apply. Next, the Court determines when the clock for Solas to file her claims started running. When determining the latter, the Court needs to identify when her alleged injury was inflicted. *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 5 (1st Cir. 2007) (noting that "the first step in such an inquiry is to determine the actual injury on which the plaintiff rests the cause of action") (citing *Guzman-Rivera v. Rivera-Cruz*, 29 F.3d 3, 5 (1st Cir. 1994)). This is where Solas' argument about the continuing violation doctrine comes into play. Solas argues that this doctrine is applicable to § 1983 and § 1985 claims and, that when it is applied to these facts, her claims are not time-barred. *Pl. Opp.* at 35-39. Specifically, she argues that the comments made by a few state legislators in September and October 2022 and a "deficient offer of judgment" made in 2023 require the Court to start the clock on the statute of limitations from one of those dates rather than the earlier June 2021 or August 2021 dates argued for by the Defendants. *Id*. The Court addresses each aspect in turn.

### A. Applicable Statute of Limitations

Neither 42 U.S.C. § 1983 nor § 1985 contain a built-in limitations period. "A federal court adjudicating a section 1983 action must borrow the forum state's general statute of limitations for personal injury actions." *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007); *Centro Medico Del Turabo, Inc. v. Feliciano de Melicio*, 406 F.3d 1, 6 (1st Cir. 2005) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). Rhode Island law

7

requires that "[a]ctions for injuries to the person shall be commenced and sued within three (3) years." R.I. Gen. Laws § 9-1-14(b). Further support for applying a three-year statute of limitations can be found in R.I. Gen. Laws § 9-1-25(a), which limits the time for bringing suit against state, political subdivision, city, or town to three years. *See Lastarza v. Neronha*, 2025 WL 369935 at *9 (D.R.I. Feb. 3, 2025) (applying a three-year statute of limitations to a prisoner's § 1983 claims).

The Court need not spend much time on determining the applicable statute of limitations because it is clear, and the parties seemingly agree, that the appropriate statute of limitations for these claims is three years. *See* R.I. Gen. Laws § 9-1-14(b) and § 9-1-25(a).

### B.  Accrual date

The next question is when do the three years start running? The Defendants urge this Court to start the statute of limitations clock on June 2, 2021, August 2, 2021, or August 4, 2021, and argue that Solas' claims are barred regardless of which date the Court applies because the instant case was filed on August 5, 2024. Solas does not dispute that the applicable statute of limitations is three years or that she filed this case on August 5, 2024, but she urges this Court to apply the continuing violation doctrine and start the statute of limitations clock later than August 4, 2021.

Even though the forum state's general statute of limitations for personal injury actions govern the length of the statute of limitations, federal law dictates when the accrual date begins. *Feliciano de Melicio*, 406 F.3d at 6 (citing *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 353 (1st Cir. 1992)). "[A] claim ordinarily accrues 'when

8

the plaintiff knows, or has reason to know, of the injury on which the action is based.'" *Id.* (citing *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 119-20 (1st Cir. 2003) ("Under federal law, the time of accrual of a civil rights action is when the aggrieved party knows or has reason to know of the injury which is the basis for his action or when facts supportive of a civil rights action are or should be apparent to a reasonably person.") (internal citations omitted)); *see also Lastarza*, 2025 WL 369935, at *3 (noting that "in Section 1983 claims, 'a plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt.'") (quoting *Moran Vega v. Cruz Burgos*, 537 F.3d 14, 20 (1st Cir. 2008)).

So, the Court must decide when Solas knew or had reason to know of the injury on which her claims are based. Solas' asserted injuries are, essentially, that the "Defendants jointly acted in concert to abridge [her] freedom of speech and deprive her of her First Amendment rights." Compl. at ¶ 143. She specifically alleges that she "has a clearly established right to be free from suits filed against [her] by state actors" and that reasonable school officials "knew or should have known that it was unlawful to file suit against [her]." *Id.* ¶¶ 144-45. She also asserts that the alleged retaliatory behavior – contemplating litigation to chill her speech – violated her rights under the Equal Protection clause because she says she was treated differently from other similarly situated individuals. *Id.* ¶¶ 153-57. With that in mind, the Court considers which date Solas could, or should, have known about these injuries. For the reasons explained below, the Court finds that the June 2, 2021 school committee

9

meeting is the statute of limitations accrual date, however, even giving Solas the benefit of the doubt, the latest possible accrual date is August 4, 2021.

The Court focuses in on the June 2, 2021 school committee meeting (at which the committee members debated whether to initiate litigation against Solas) as the date that Solas knew or should have known about her injuries. Despite not being provided with personal notice of the meeting, the agenda for the meeting was published on May 28, 2021 and was publicly available. *Id.* ¶¶ 68, 90. That agenda made clear, as Solas' Complaint acknowledges, that one of the main topics at that committee meeting was "the [p]otential litigation related to over 160 APRA requests filed by one individual" and "[f]iling lawsuit against Nicole Solas to challenge filing of over 160 APRA requests." *Id.* ¶ 68; *S. Kingstown Sch. Comm. Special Meeting Agenda* (June 2, 2021). With respect to Solas' asserted injury as the subject of retaliation for exercising her First Amendment rights, she should have known about this injury by the June 2 date of the school committee meeting. *See Feliciano de Melicio*, 406 F.3d at 6 (remarking that "plaintiffs did not dispute that they knew, or had reason to know, of their injuries immediately following the occurrence of each of the various incidents."); *see also Nieves-Marquez*, 353 F.3d at 119-20; *Lastarza*, 2025 WL 369935 at *3.

Alternatively, if the Court were to determine that Solas knew, or should have known, about the injuries on the date that she was actually served with the state court lawsuit filed by the Unions, the accrual date would be August 4, 2021. Either date, June 2, 2021 or August 4, 2021, would result in Solas' claims being time-barred

10

because she would have had to file, at the latest, on August 4, 2024, but she regrettably did not file until August 5, 2024. Therefore, the claims are time-barred unless the continuing violation doctrine applies, and the Court utilizes an accrual date after August 5, 2021.

### C. Continuing Violation Doctrine

While claims filed outside the statute of limitations are time-barred, the continuing violation doctrine may allow "a plaintiff [to] recover for injuries that occurred outside the statute of limitations under certain narrow conditions." *Lastarza*, 2025 WL 369935, at *5 (quoting *Gorelik v. Costin*, 605 F.3d 118, 121-22 (1st Cir. 2010)). Said another way, the doctrine "allow[s] filing suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." *Id.* (quoting *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008)). Courts have recognized that the continuing violation doctrine "does *not* allow a plaintiff to avoid filing suit so long as some person continues to violate [her] rights," and that a "continuing violation occurs when there is a series of continual unlawful acts, *not* when there are merely continual harmful effects from an original unlawful act." *Id.* (quoting *Muñiz-Rivera v. United States*, 204 F. Supp. 2d 305, 315 (D.P.R. 2002), aff'd, 326 F.3d 8 (1st Cir. 2003)). "[A] plaintiff may link a number of discriminatory acts emanating from the same discriminatory animus, even though each act constitutes a separate wrong. If the plaintiff can forge that link and can also show that at least one act in the series occurred within the limitations period, the suit may be considered

11

timely as to all the acts." *Feliciano de Melecio*, 406 F.3d at 7 (internal citations omitted).

Defendants assert that the continuing violation doctrine should not extend outside the Title VII context and, even if the Court applies the doctrine, the law still requires the Court to start the clock on June 2, 2021 or August 2 or 4, 2021. *See generally Defs' Reply* (ECF No. 20). The First Circuit has noted that "[t]he classic example of a continuing violation is a hostile work environment." *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009) (explaining that the doctrine "applies in that [Title VII] setting because hostile work environment claims by their very nature involve repeated conduct, and a single act of harassment may not be actionable on its own") (internal citations omitted). This aligns with precedent in the First Circuit, which has held that "it is now well established that the doctrine does not apply to 'discrete acts' of alleged discrimination that occur on a 'particular day,' but only to discriminatory conduct that takes place 'over a series of days or perhaps years.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

Recently, a colleague within this Court stated that "[the continuing violation] doctrine does not apply to [plaintiff's] claims as the caselaw applying it is limited to Title VII and other discrimination cases." *Lastarza,* 2025 WL 369935, at *3, *5 (alleging claims pursuant to 42 U.S.C. § 1983). However, the First Circuit has discussed the continuing violation doctrine in a case involving a First Amendment retaliation claim and an Equal Protection claim brought under 42 U.S.C. § 1983. *Feliciano de Melecio*, 406 F.3d at 6-10; *see also Muniz-Cabrero v. Ruiz*, 23 F.3d 607,

12

610 (1st Cir. 1994) (analyzing the continuing violation theory in the context of a claim brought under 42 U.S.C. § 1983, and ultimately deciding the claim was time-barred). Mindful of the varying takes within the case law, this Court will consider whether Solas' claims can be saved from the strict application of the statute of limitations by application of the continuing violation doctrine.

In this case, there is no question that the accrual date is June 2, 2021 or, for the reasons expressed above, August 4, 2021, at the latest. The Court disagrees with Solas that the comments made by various state legislators on social media and the remarks from the state Attorney General on the radio in September and October 2022 constitute a continuing harm such that the accrual date can or should be delayed to one of those dates. The Court also disagrees that the accrual date should begin on March 14, 2023 when the school department made the purportedly "legally deficient offer of judgment" to Solas. The Court explains why below.

First, state senator Kendra Anderson, representative Tiara Mack, representative Brandon Potter, and Rhode Island Attorney General Peter Neronha are not named defendants in this lawsuit. Nor are these state officials involved in the state court lawsuit filed by the Unions in August 2021. Moreover, the only time Solas mentions these individuals is at the end of the Complaint when she alleges their respective comments. Compl. at ¶¶ 134-35. There are no allegations that any of these individuals were part of the decision-making process behind the June 2, 2021 school committee meeting agenda item, that they participated in the June 2, 2021 meeting, or had any impact whatsoever on any of the Defendants' actions in this case.

13

It is important to note that public officials must be able to comment on matters of public concern. In fact, the First Circuit has said that "not only do public officials have free speech rights, but they also have an obligation to speak out about matters of public concern." *Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 143 (1st Cir. 2016) (quoting *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013)). The Court declines to consider the actions of non-defendant public officials in this analysis, it therefore declines to conclude that the continuing violation doctrine applies such that the date of any of these state officials' comments should restart the clock.

Finally, Solas' argument to set the accrual date as March 14, 2023, the date of the "legally deficient offer of judgment," is even less convincing. First, this allegation reads like a legal conclusion with no details as to what made it legally deficient or how it was "merely another intimidation tactic." Compl. at ¶¶ 136. Next, this offer of judgment, aka settlement offer, was made "in a separate lawsuit involving an unlawful denial of an APRA request." *Id.* Understanding the sensitive and confidential nature of settlement negotiations, the Court can understand why the details of the legally deficient offer of judgment were not included in the pleadings, but the Court simply does not find a nexus between a settlement offer in an unrelated case and the claimed retaliation and different treatment in this case.[6] Solas' Counsel described this offer of judgment as "the last straw of this continuing intimidation."

---

[6] It should be noted, however, that parties are free to negotiate settlements amongst themselves, and if there is some impropriety with the parties' conduct or the content of the settlement offer, there are remedies that can be sought through the judge presiding over the case and/or, in extreme cases, with disciplinary counsel.

Def.'s Mot. to Dismiss Hr'g Tr. 22:19-24.  The case law dictates that the clock starts running when the injury becomes known, or should have become known, not when the injured party is finally fed up.

The Complaint makes clear that Solas knew or should have known about the claimed injury on or before August 4, 2021.  The fact that other comments were made about her after the injury occurred by non-parties may suggest that she felt continual harmful effects from the original allegedly unlawful act, but it does not suggest that there was a series of continual unlawful acts.  *See Tobin*, 553 F.3d at 130.

The Complaint lacks any allegations about any of the Defendants, NEARI, or NEASK post August 4, 2021.  Even if the continuing violation doctrine applies to claims brought under 42 U.S.C. § 1983 or § 1985, the Court determines that the application of the doctrine to these facts fails to change the accrual date, resulting in Solas' claims being time-barred by the statute of limitations.

## IV.  CONCLUSION

For the reasons stated above, the Defendants' Motion to Dismiss (ECF No. 15) is GRANTED.

15

IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge


May 13, 2025